UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 09-226-JBC

ROBERT ROSELIEB,                   PLAINTIFF,

V.       MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,           DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment. R. 7, 11. For the following reasons, the court will grant the Commissioner's motion and will deny the plaintiff's motion.

I.    **Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo,* resolve

conflicts in evidence, or decide questions of credibility; rather, it must examine the record as a whole to determine whether the decision is supported by substantial evidence. *Id.* The decision of the ALJ must stand if the evidence could reasonably support the decision, even if the evidence could also support another conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ conducts a five-step analysis when determining disability. At Step 1, the ALJ considers the claimant's work history to determine whether the claimant is performing substantial gainful activity. At Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe." At Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments. At Step 4, the ALJ determines whether the claimant can perform past relevant work. Finally, after establishing that the claimant cannot perform past relevant work, at Step 5 – the step in which the burden of proof shifts to the Commissioner – the ALJ determines whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

At the time of the alleged onset of Robert Roselieb II's disability, he was thirty-three years old. He filed an application for social security benefits on August 14, 2006, alleging disability beginning on August 7, 2006. The claim was initially

denied on September 28, 2006, and upon reconsideration on March 30, 2007. Roselieb requested a hearing, which was held on April 17, 2007. Following this hearing, on February 8, 2008, Administrative Law Judge ("ALJ") Frank Letchworth determined that Roselieb did not suffer from a disability as defined by the Social Security Act.

At Step 1, the ALJ found that Roselieb had not engaged in substantial gainful activity since the alleged onset date, August 7, 2006. AR 15. At Step 2, the ALJ found that Roselieb suffered from the following combination of impairments considered "severe" under 20 C.F.R. 404.1520(c): nerve damage to the right arm and depression. *Id.* The ALJ then determined at Step 3 that Roselieb's impairments did not meet or equal a listed impairment in 20 CFR § 404, Subpart P, Appendix 1. *Id.* at 18. At Step 4, the ALJ determined that Roselieb was unable to perform his past relevant work as a belt head operator, truck driver, retail stocker, and business machine repairman. *Id.* at 22. At Step 5, the ALJ determined that significant numbers of other jobs exist in the national economy that Roselieb can perform. *See Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1520.

**III.   Analysis**

    **A.   The ALJ Did Not Err in Considering the Opinion of the Treating Physician.**

Roselieb alleges that the ALJ failed to give adequate deference to Dr. Fazal Ahmad's findings. Specifically, Roselieb objects to the weight given Dr. Ahmad's residual functional capacity ("RFC") determinations. Dr. Ahmad concluded that

3

Roselieb could not carry anything in his right hand, and that his ability to reach, handle, feel, push, and pull were all "affected" by his impairment, but he did not indicate the degree to which Roselieb's right hand was affected in these respects.[1] AR 468. Dr. Ahmad also noted that Roselieb could stand or sit for two to four hours in an eight-hour work day; could never climb, stoop, kneel, or crawl, and could balance and crouch; and was restricted in his ability to tolerate moving machinery and vibration. *Id.*

Although the opinions of treating physicians are generally afforded greater deference, such opinions are entitled to great weight only if they are supported by sufficient clinical findings and are consistent with the evidence. *Deaton v. Comm'r of Soc. Sec.*, 315 Fed. Appx. 595, 599 (6th Cir. 2009). Here, Dr. Ahmad failed to provide any medical support for the physical limitations he identified. AR 467-68. He also failed to explain how the restrictions he identified affected Roselieb's physical functions. *Id.* Moreover, the opinions of treating physicians regarding a claimant's RFC are not considered medical opinions, and are instead viewed as relevant evidence on an issue reserved for the Commissioner. *Deaton*, 315 Fed. Appx. at 599.

Roselieb also contends that the ALJ erred in considering opinion evidence

---

[1] In contrast, the ALJ concluded that Roselieb could use his dominant right upper extremity only for balance and support, and that this use could involve only occasional pushing and pulling and frequent handling. AR 20. Thus, given Dr. Ahmad's failure to explain how the impairment "affected" certain functions, the court cannot determine the degree of conflict, if any, between Dr. Ahmad's RFC evaluation and the ALJ's RFC evaluation.

4

from state agency consultants who had not reviewed the full record. In contrast to Dr. Ahmad, these consultants concluded that Roselieb could occasionally lift and carry 20 pounds and could frequently lift and carry 10 pounds; could stand and sit with normal breaks for a total of about six hours in an eight-hour workday; and that Roselieb was not restricted in terms of exposure to vibration or in stooping, kneeling, or crouching. Although these consultants did not consider the full record, Roselieb has not shown that the ALJ did not do so. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir.2009) (requiring some indication that ALJ considered records that were not considered by a state agency physician before giving greater weight to that physician's opinion). Here, the ALJ considered the additional records from Dr. Michael Boland (AR. 16, 442-48), Dr. W. Ben Kibler (AR 16, 438-40, 484-87), and Dr. Warren Breidenbach (AR 17, 470-82 ). Although the ALJ did not discuss Roselieb's physical therapy records specifically, he was not required to discuss every piece of evidence in the record. *See Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005) ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision."); Wheeler v. Astrue, No. 09-72, 2010 U.S. Dist. LEXIS 13358, at *7 (S.D. Ohio Jan. 15, 2010). Moreover, Roselieb has not identified anything specific in any of these records that undermines the ALJ's determination.

Rather, the ALJ's decision was supported by substantial evidence. First,

with respect to Roselieb's right upper extremity function, Roselieb's physical therapy records indicate that he tolerated treatment well and experienced improved strength, and that he was able to do therapeutic and resistive exercises using light weights and grippers. AR 450-54. In addition, the ALJ explained that he could not give great weight to Dr. Ahmad's conclusion that Roselieb could not lift with his right hand because that opinion was not supported by objective medical evidence.

The ALJ also opined that, although Roselieb's impairments could reasonably be expected to produce the alleged symptoms, he did not find Roselieb's statements regarding the persistence and limiting effects of these symptoms entirely credible. AR 20. Specifically, the ALJ noted that Roselieb had declined to pursue surgery, that his treatment thus far had been conservative, and that Roselieb had not sought medical treatment for any medical condition since May 2007. *Id.* at 20-21; *see also McKenzie v. Comm'r of Soc. Sec.*, 2000 U.S. App. LEXIS 11791, *13 (noting that the plaintiff's complaints of disabling pain were undermined by his non-aggressive treatment).

Thus, based on the record as a whole, the ALJ's findings regarding Roselieb's physical limitations were supported by substantial evidence.

**B.   The ALJ Did Not Err in Evaluating Roselieb's Mental Health.**

The ALJ also did not err in weighing the opinion of Dr. Syed Raza. Dr. Raza examined Roselieb twice, in October 2006 (AR 383-84 ) and in February 2007 at the Commissioner's request (AR 405-10). Roselieb has not shown that Dr. Raza

6

was a treating physician, however, and therefore his opinion was not entitled to greater deference. A physician qualifies as a treating source if he or she sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). Here, Dr. Raza recommended that Roselieb follow up with him in two weeks, but there is no indication in the record that Roselieb did so. AR 384. This reinforces the notion that these two examinations were not of sufficient duration to make Dr. Raza a treating physician under the regulation. Because Dr. Raza was not a treating physician, the ALJ was not required to provide reasons for discounting his opinion.

Moreover, there is substantial evidence in support of the ALJ's decision regarding Roselieb's mental limitations. Dr. Raza found that Roselieb had a fair understanding and could remember simple two-step instructions; had good sustained concentration and persistence, although it look him longer to complete tasks; had poor socializing skills, anger, agitation, and mood swings, and experienced difficulty in social interactions and in public. AR 409. Dr. Raza also assigned Roselieb a Global Assessment of Functioning (GAF) score of 55, which, according to the American Psychiatric Association's DSM-IV, indicates only "moderate" symptoms. AR 18. The ALJ similarly concluded that Roselieb could perform "no more than simple 1 and 2 step instructions"; "was capable of

sustaining attention to complete tasks that are simple or repetitive for 2 hour segments where speed is not critical"; and could have no public contact in a work setting. AR 20. Although the ALJ concluded that Roselieb could tolerate co-workers, whereas Dr. Raza indicated Roselieb had a more limited ability to interact with others, the opinion of a state agency medical consultant supports the ALJ's decision. That consultant opined that Roselieb could tolerate coworkers and supervisors, but should have no public contact. AR 427; *see also Fletcher v. Comm'r of Soc. Sec.*, No. 99-5902, 2000 U.S. Dist. LEXIS 11770, at *3 (6th Cir. May 19, 2000) (explaining that opinions of non-examining consultants can be treated as substantial evidence even when contradicted by the opinions of examining but non-treating consultants). Thus, because the ALJ's determination regarding Roselieb's mental limitations was supported by substantial evidence, the ALJ did not err regarding this issue. AR 19.

### III. Conclusion

Accordingly, **IT IS ORDERED** that Roselieb's motion for summary judgment R. 7, is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 11, is **GRANTED.**

A judgment regarding this matter will be issued separately.

Signed on  May 14, 2010

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY